MARY D. STRONG et al *v.* VIRGIL M. CANNON.

**Wills — Construction of Powers in, Conferred on Trustee.**

In construing the powers of a trustee, conferred in a will, the general purpose or scheme of the testator must be looked to; and where the trustee is vested "with full discretionary power" with respect to the trust and the fund is given him "to control, administer, and manage and to make such investments and disposition of it as he may deem best" and to appropriate the proceeds of same to certain beneficiaries named in the will, the power of the trustee is limited, and he is bound to have regard to the purposes of the trust and to act in accordance therewith.[1]

**Same — Final Account and Discharge of Trustee.**

A decree of the Chancery Court allowing a final account and discharging a trustee under a will is erroneous when the final account fails to show, with certainty, what the trustee received under the will, when he received it, and how he disposed of it.[2]

---

[1]

The great rule for the interpretation of a will is that the intention of the testator must be ascertained from the language employed and must be carried into effect, if not inconsistent with the rules of law, and the words are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected from the will. Where there is no ambiguity in the words there is no room for construction. Vannerson *v.* Culbertson, 10 S. & M. 150.

The words are to be construed in their plain and natural sense, unless a

J. R. Mosely died in 1876, testate, leaving a considerable estate. He named appellee, V. M. Cannon, and Robt. Day, his son-in-law, trustees to execute his will but conferring upon them distinct and separate powers and providing that one should not be held liable for the acts of the other.

The will in so far as it is material to this case is as follows:

"I give and bequeath to said Cannon, in trust, all my cash, cash assets, notes, accounts, mortgages and other claims and choses in action, to control, administer and manage the same and make such investments and disposition thereof as he may deem best and to appropriate the revenue, interest, proceeds and profits of the same to the use and benefit of Ann Eliza Harris, and the heirs of her body forever and to the children of my deceased daughter Josephine Day and the heirs of their bodies forever; one half to the said Ann Eliza, and the heirs of her body and one half to the

different intention be manifested by the context. Tucker v. Stites, 39 Miss. 196.

It is always safest, in the interpretation of wills, to adhere to the words of the instrument, without considering either the circumstances arising *aliunde* or calculations that may be made as to the amount of property, or the consequences which may flow from any particular construction. Curry v. Murphy, 35 Miss. 473.

Yet a literal construction is not to be indulged in, which would defeat an intention appearing from the whole will; but we must consider all its parts, and the circumstances under which it was made, as shown on its face, and thereby ascertain the intention of the testator. Haughton v. Brandon, 40 Miss. 729.

The intention is the main object. In the construction of wills the main object is to ascertain the intention of the testator; the intention is to be gathered from the whole will, and, if legal, is to be carried out, notwithstanding it may violate technical rules which relate to the construction of words rather than the nature of the estate. Sorsby v. Vance, 36 Miss. 564.

In the construction of a will every part and provision must be made, if possible, to harmonize, and be consistent with the other parts; a construction will not, therefore, be put upon a clause of doubtful import, which would make it irreconcilably inconsistent with another plain and clear provision of the will. Dean v. Nunnally, 36 Miss. 358.

Technical rules of law, and the authority of adjudged cases, are not to be disregarded in the construction of wills; yet the true interpretation of a will is so dependent upon the language and circumstances of each particular instrument that adjudged cases are of less authority and are more hazardous in their application to the construction of wills than in any other branch of the law. Sorsby v. Vance, 36 Miss. 564.

Adjudicated cases can give but little aid in the exposition of a will, unless the words in the adjudicated case relied on, and the words in the will under

children of said Josephine Day, deceased, and the heirs of their body forever."

"And I hereby invest said Robt. Day and V. M. Cannon with full discretionary power in executing their respective trusts aforesaid."

Cannon accepted the trust and administered same for several years. He filed his final account and in his petition asked to be finally discharged from his office as trustee. Appellants, children of Josephine Day, daughter of testator, and Robt. Day, appeared and filed exceptions to the account. The account does not show, definitely, how much Cannon received under the will. It shows receipts for considerable sums by Robt. Day, the father of appellants, which they claim should not have been paid to him, and a receipt from R. C. Shepher for $3,337 "in payment of an indebtedness due me by Josephine and Robt. Day secured by deed

---

consideration, be the same precisely, and are used in the same connection. Vannerson *v.* Culbertson, 10 S. & M. 150.

To discover the intent of testator the court looks to the whole of a will. Tatum *v.* McClelland, 50 Miss. 1.

If apparent from the other parts of a will that a word was improperly used, it may be rejected, but it will not be rejected on a conjecture that the testator intended a provision similar to that in the statute regulating descent and distribution. Caldwell *v.* Willis, 57 Miss. 555.

Where the general purpose of the testator may be gathered from the whole will, an inconsistent clause referring to administration will be disregarded. Leigh *v.* Harrison, 69 Miss. 923.

The court will look at all the circumstances which surrounded the testator. Apparent inconsistencies in several parts of a will will be disregarded if there can be clearly discerned a general intent that should prevail and override the particular, although the latter be first expressed. The intent must control if it can be made compatible with the language used. Watson *v.* Blackwood, 50 Miss. 15.

See also Whitfield et al. *v.* Thompson et al., 85 Miss. 749; Gordon *v.* McDougal, 84 Miss. 715.

2

On a final accounting it will be presumed that one who was shown to be at one time an administrator continued in that capacity until the debts had been paid and the assets collected. Barr *v.* Sullivan, 75 Miss. 536.

An agent or trustee must conduct the business of his trust with fidelity, and follow the line of duty prescribed. Pressly *v.* Ellis, 48 Miss. 574.

Fiduciaries are responsible if they exceed their authority, although no bad faith may prompt their acts, and those who deal with them must take notice of the limitation of their power. Vernon *v.* Tippah County, 47 Miss. 181.

See also § 1950, Code of 1892.

of trust on the Thomas place belonging to said Josephine Day." From a decree allowing the account and discharging the trustee this appeal was taken by the children of Josephine Day.

APPEALED from Chancery Court, Yazoo county.

Reversed and remanded, April 27, 1885.

*Attorneys for appellant, J. C. Prewett.*

*Attorneys for appellee, Hudson, Hudson & Holt.*

Brief of J. C. Prewett:

There is a single question involved — the proper construction of the will of Joseph R. Mosely, deceased — and on that depends the correctness of the decree of the Chancery Court. * * *.

Each of the trustees, under the will, was made independent, the one of the other, and it was provided that "neither of them be responsible for the acts of the other," and that "neither of them shall be required to give security for the proper execution of their respective trusts." Does this language indicate that the trustees were to be emancipated from all control of law and reason and justice?

Or does it mean that the "discretion" given by the will was a sound legal discretion?

"Discretion" has been defined as "a man's own judgment as to what is best in a given case, as opposed to a rule governing all cases of a certain kind." Thus, a trustee has a discretion, often, as in this case, in the management or application of the trust property. So, a judge or court often has a discretion in making orders, or imposing conditions on litigants. Discretion, however, is to discern by the right line of law, and not by the crooked cord of private opinion, which the vulgar call discretion (Co. Litt. 227b); and, therefore, if a judge proceeds on a wrong principle, in a matter within his discretion, his order may be set aside on appeal; and if a trustee acts fraudulently or negligently, the possession of a discretionary power will not protect him. And it is also the law, as I understand it, that discretionary trust could be administered by the exercise of prudence and sagacity. Lewin on Trusts, 18; 5 Paige, 485.

The language of the books is, " If a trustee, whether his duties are by the law or by the instructions given by an individual who may appoint him, is under a duty to follow the directions of the law, or the instructions given by the person who appoints him, and if he exceeds his authority, or disobeys the rules prescribed to him, he acts at his peril, and undertakes responsibility for the consequences." Pennington *v.* Seal, 49 Miss. 544.

Trustees are responsible for violations of their trust, though no bad faith is imputed. Vernon *v.* Board Sups., 47 Miss. 181.

It is no less the rule of law than the suggestion of natural justice that an agent or trustee holding a confidential relation, whether under the law of the land, or by the appointment of an individual, shall conduct the business of his trust with .fidelity to those for whom he acts and follow the line of duty prescribed by the appointing power. Pressley *v.* Ellis, 48 Miss. 544. * * *

It is clear, it seems to me, that Mosely's *intention* was that his grandchildren, by his daughter Josephine, should receive " one-half of the proceeds," etc., of his " cash and cash assets," etc., and it was not his intention that the *corpus* of this valuable fund should be turned over to them, or any one for them. The *corpus* was to remain intact, and in such shape as to yield an income or revenue, for the objects of the testatory. county. Cannon could determine the method of investment; he could determine in his discretion what form ahd shape the investment should assume; but he could not say there should be no investment; he could not shirk his voluntarily assumed duty by giving away the fund, or making any disposition of it inconsistent with his fiduciary duties.

A trustee, having accepted a trust, cannot renounce it. If any one undertakes an office for another, he is bound to discharge its duties, and he cannot free himself from liability by mere renunciation. He can only be discharged by a court of equity, or by a special power in the instrument of trust, if or by the consent of all parties interested in the estate, if they are *sui juris;* if all the parties are *sui juris* recourse must be had to a court of equity. Perry on Trust, 401, citing a number of cases.

The office of trustee is one of personal confidence and cannot be delegated. If a person takes upon himself the management of property for the benefit of another, *and if he does,* he will be responsible to the *cestui que trust,* to whom he owes the duty. 5 Read, 517. Wherefore, if a trustee confides his duties or the

trust fund to a stranger, or to his attorney, or *even to his cotrustee or coexecutor,* he will be personally responsible. \* \* \*

A cardinal and salutary rule for the construction of wills is to gather the intention of the testator, and that intention must be gathered, not from a part or parts, but from the entire instrument. A liberal construction is not to be indulged in which would defeat an intention appearing from the whole will; but we must consider all its parts, and the circumstances under which it was made, as shown on its face, and thereby ascertain the intention of the testator. Haughton v. Brandon, 40 Miss. 729; Sorsby v. Vance, 7 George, 564; Dean v. Nunnally, 7 Ibid. 358.

Chancellor Kent (vol. 4, p. 535) says: " The intention of the testator is the first and great object of inquiry; and to this object, technical rules are, to a certain extent, subservient. The intention of the testator, to be collected from the whole will, is to govern; provided it be not unlawful."

In New York, it was held that, however technical are the words used by a testator, his clear intent will countervail the legal opinion of those words. Lasher v. Lasher, 13 Barb. 106.

It is not necessary for the appellants to contend that the laws governing the liabilities and duties of guardians are applicable to this case; but it may be that they may furnish an analogy that may be worth suggesting.

Courts of equity possess an inherent jurisdiction over infants and their estates; their authority in this regard being embraced in every general legislative or constitutional grant of equity powers. Williams v. Berry, 8 How. (U. S.) 555; 8 Blackf. 15; *Ex parte* Crumb, 2 Iolins, 439. The jurisdiction of the Court of Chancery over infants so far as relates to their property is very ancient, and probably coeval with the first establishment of the court. It exercised a control over legal guardians at a very early period, removing them in a proper case, or compelling them to give security, and exercising a general supervision over their fiduciary duties. The court has also taken charge of the maintenance and education of infants, directing the application of the income of their estates for that purpose. Spence, Equity, 612, 613; *Ex parte* Phillips, 19 Vern. 122; Wellesly v. Duke of Beaufort, 2 Russ. 20. The court has exercised nearly the same control of testamentary guardians as over guardians who derived their authority from the court. Beaufort v. Berby, 1 P. 704.

Brief of Hudson, Hudson & Holt:

The only question for the consideration of this court, as we understand it, is the legality of the payments of appellee to Robert Day, the father of appellants. The remainder of the final account under consideration is not excepted to. This question must be solved by a construction of the will of Joseph R. Mosely. About as large and unlimited discretion and power are given appellee over the subject-matter as could well be conferred by the English language. He is not only authorized to " *control, administer and manage*" the same as he may deem best, but to make " such *investments and dispositions*" thereof " as he may deem best." It follows from this language, when construed in the light of the whole will, that a disposition of the funds to the father of appellees was one fully within the scope of the will. * * *

This property was in the shape of " cash, cash assets, notes, accounts, mortgages, and other claims and choses in action," and was to be used in the payment of all debts and legal liabilities of the testator, as far as necessary, and the balance was to be divided, one half to appellants and the other half to another. * * *

If the court should conclude from the facts that it was the intention of the appellee to turn over the funds going to appellants to their father to be invested or disposed of by him instead of by appellee, then the conclusion must follow that Day was simply the successor of appellee in his trust as to this particular fund, and he is not responsible for the management of it by Day. * * *

It occurs to us that there are really only two questions worthy of discussion in this case; one is, whether or not, under the discretion given appellee by the will he did not have the right to pay the funds to the father of appellants. The other is, did not the payments to Day of this particular fund, in view of the powers under the will and the wording of the receipts and all the circumstances, amount to the selection or appointment of day as a successor as to the particular fund turned over to him? * * *

It is admitted that trustees must follow strictly the powers conferred, but when so large a discretion is given as in this case, then the rule is that the trustee is presumed to have acted honestly and in good faith in the exercise of such discretion, and unless something is shown to the contrary the court will so hold. In Hill on Trustees, page 488, last clause, this language is used: "As a court of equity will not in general assume the exercise of

a discretionary power, vested in trustees, so it will not interfere to control the trustees acting *bona fide* in the exercise of their discretion." There are a number of cases here referred to. If a court will not interfere to control the trustee in the exercise of his discretion, while acting *bona fide, a fortiori,* it will not, after he has exercised his discretion in good faith, hold him responsible. The court would certainly not presume bad faith in the absence of anything to show or give color to any such presumption.

OPINION—CAMPBELL, J.:

The will of Mosely conferred a very large discretion on Cannon, the trustee, but it was not unlimited. It did not authorize him to do as he pleased with the trust fund, but he was to exercise his judgment " and make such investment and disposition thereof as he might deem best, and to appropriate the revenue, interest, proceeds, and profits of the same to the use and benefit " of the beneficiaries named.

The manifest purpose was to invest the fund and devote the income or profits to the beneficiaries. "Full discretionary power" as to investment and disposition for the purposes of the trust was conferred by the will, but the trustee was bound to have regard to the purposes of the trust and to act in accordance therewith.

It is probable that the devotion by the trustee of part of the trust fund to the discharge of an incumbrance on the "Thomas place," whereby we suppose it was freed from a legal charge upon it and secured to the children of Josephine Day, was a justifiable investment or disposition of so much money as was required for that purpose. All that appears is, that Shepherd received payment of an indebtedness due him from Josephine Day and Robert Day, secured by deed of trust on the Thomas place, belonging to Josephine Day. The character of the indebtedness is not shown. If it was a debt of Mrs. Day, its discharge by the trustee was proper.

The several payments of money by Cannon to Robert Day would seem *prima facie* to be not warranted by the terms of the will and the relation of the parties. Circumstances may have existed to make disbursements of money to Day proper, but they do not appear. Assuming the propriety of the payment to Shepherd, it is highly probable, as argued by counsel, that enough more money

was rightly applied to the use of the children through payments to their father, Robert Day, to warrant the decree discharging the trustee. This is on the further assumption that the appellee accounted for all he is chargable with.

But the record fails to show satisfactorily what the appellee received under the will, when he received it, and how he disposed of it. He has asked a decree discharging him on account of the trust. It devolves on him to account fully and show himself entitled to be discharged from all further liability to account.

Probably he can do so, but he has not done it, and, therefore, the decree is reversed, and cause remanded for further proceedings in the Chancery Court.

*Reversed and remanded* April 27, 1885.